**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **SELVYN ARMANDO MENDOZA-TORRES,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-725-KC** |
| | § | |
| **KRISTI NOEM et al.,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**ORDER**</u>

On this day, the Court considered the case.

**I.      BACKGROUND**

On April 21, 2026, after Defendants conceded that Plaintiff was wrongfully removed to

Honduras, the Court ordered Defendants to file an advisory detailing the concrete steps taken to

facilitate Plaintiff's return to the United States, the additional steps required to do so, the

anticipated timeline for each step and Plaintiff's return, any anticipated obstacles, and the

location to which Plaintiff will be returned.  Apr. 21, 2026, Order, ECF No. 25.

On April 27, Defendants filed an Advisory, ECF No. 26, in which they explained the

steps required to facilitate Plaintiff's return to the United States and provided an estimated

timeline of ten to thirty business days for Plaintiff's return.  Respondents also stated that they

"intend[] to return Plaintiff to ERO Atlanta, where he will be detained during the pendency of

ongoing removal proceedings." *Id.* ¶ 9.  And they intend to file "a motion to change venue . . . to

transfer the immigration court jurisdiction from EOIR Charlotte to EOIR Stewart." *Id.*

On April 29, Defendants filed a Supplemental Advisory, ECF No. 27, informing the

Court that they had scheduled a return flight for Plaintiff early the following week, but that

Plaintiff rejected the terms of the proposed return.  And that, "[w]ithout [Plaintiff's] cooperation, his return cannot be facilitated."  *Id.* at 2.

On April 30, Plaintiff filed a Reply, ECF No. 28, arguing that Defendants' proposed return plan "is not facilitation of [his] return as required by *Abrego Garcia* and the Court's April 21, 2026, Order," as it "does not return him to his previous posture." *Id.* at 2.  Specifically, Plaintiff objects to Defendants' plan to (1) detain him, upon his arrival in the United States, at Folkston ICE Processing Center during the pendency of his removal proceedings, without an opportunity for bond, and (2) seek to transfer Plaintiff's immigration case from EOIR Charlotte to EOIR Stewart.  *Id.*  He argues that his "pre-removal posture was as a free person in his community in Myrtle Beach; in removal proceedings before EOIR Charlotte; represented by counsel with a motion to reopen pending," and that this "is the posture facilitation must restore." *Id.* at 5.  He also argues that "Defendants cannot use the occasion of restoration to impose harms more severe than those that existed pre-removal." *Id.* at 6.

Thus, Plaintiff requests that the Court order that Respondents (1) return him to the United States before May 12, at no cost to him, (2) upon arrival at a port of entry, parole him into the country under 8 U.S.C. § 1182(d)(5) and release him to counsel or family, (3) not detain him beyond the minimum logistically necessary time for processing at the port of entry, (4) not seek a change of immigration court venue during the pendency of his removal proceedings, (5) not remove him to a third country under any Asylum Cooperative Agreement, (6) provide his counsel with reasonable advance written notice of the date, time, and port of entry of his return, and (7) provide him and his counsel reasonable time prior to any merits hearing in his removal proceedings to consult, gather, and present evidence in support of his asylum application.  *Id.* at 9–10.

In response, Defendants argue that Plaintiff's requests would not restore him to his position prior to his wrongful removal, as "[it] is undisputed that [Plaintiff] was in federal custody, and therefore in detention, prior to his removal." May 5, 2026, Advisory, ECF No. 29. Moreover, they argue that, "[t]o the extent Plaintiff believes his detention would be unlawful, he has the option to contest his detention if he chooses to return to the United States." *Id.* at 2. And Plaintiff may also oppose Defendants' motion to change venue from EOIR Charlotte to EOIR Stewart in immigration court. *Id.* at 3.

On May 8, Plaintiff filed a Second Reply, ECF No. 30, responding to Defendants' arguments and reiterating his request that the Court order Defendants to facilitate his return under the terms previously requested.

## II.    DISCUSSION

While the Court has denied Plaintiff's request for a temporary restraining order, Plaintiff's request for a preliminary injunction, ordering Defendants to return him to the United States, remains pending. *See* Mot. Prelim. Inj., ECF No. 3; Mar. 16, 2026, Order, ECF No. 6.

### A.    The Status Quo

"The purpose of a preliminary injunction is to preserve the *status quo* and prevent irreparable injury until the court renders a decision on the merits." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). However, if the currently existing status quo is itself causing the movant irreparable injury, they may be entitled to a return to the last uncontested status quo. *See Canal Auth. of Fla.*, 489 F.2d at 576; *see also Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1194 (5th Cir. 1975) (citations omitted). In *Abrego-Garcia*, the Supreme Court affirmed the authority of a district court to enter a preliminary injunction

ordering the Government to "facilitate" the return of an alien wrongfully removed from the country and "to ensure that [the alien's] case is handled as it would have been had [they] not been improperly [removed]." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

Here, despite Plaintiff's framing to the contrary, prior to his wrongful removal to Honduras, he was detained in immigration custody in Atlanta, Georgia pursuant to an in-absentia removal order, which had been automatically stayed upon the filing of his motion to reopen his removal proceedings. Compl. ¶¶ 2–5. In short, Plaintiff was in immigration custody. This is the status to which Plaintiff is entitled to be returned. *See Canal Auth. of Fla.*, 489 F.2d at 576.

### B.    Plaintiff's Detention Upon Return

While Plaintiff may very well have a legitimate basis to challenge his detention pending his removal proceedings without a bond hearing, any such challenge must be brought in habeas. *See Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (finding that where an alien detainee's claims "'"necessarily imply the invalidity"'" of their confinement," these claims must be brought in habeas (citation omitted)). And to bring a habeas petition, an individual must "be 'in custody' . . . at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 491 (1989).

Plaintiff has not brought a habeas claim, nor would he be entitled to habeas relief at this time. Plaintiff is not currently in the physical custody of Defendants. *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody."). Nor does Defendants' intention to detain Plaintiff upon his return to the United States amount to a restraint on his liberty sufficient to "place [him] 'in custody.'" *See Rosales v. Bureau of Immigr. & Customs Enf't*, 426 F.3d 733, 735 (5th Cir. 2005). Once returned, if Plaintiff believes that his detention for the pendency of his removal proceedings is unlawful, he may file a petition for a writ of habeas corpus challenging his detention, in the district of his confinement. *See Rumsfeld*

4

*v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

Plaintiff's appeal to *D.V.D. v. Department of Homeland Security* and *Pablo Pablo v. Lyons* is unavailing. *See* Reply 5; 2d Reply 6. In *D.V.D.*, the court granted one of the plaintiff's motion for a preliminary injunction and ordered that the Government "take all immediate steps, including coordinating with [the p]laintiffs' counsel, to facilitate [his] return . . . to the United States." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 412 (D. Mass. 2025). The court did not discuss whether he could be detained upon his return. *See generally id.* And, although the Government elected to not detain him upon his return, in a subsequent order on the Government's motion to dismiss, the court dismissed "any detention-based claim [as] unripe" because he was not in custody. *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-10676, 2026 WL 521557, at *9, 19–20 (D. Mass. Feb. 25, 2026). As for *Pablo Pablo*, no specific conditions were ordered to facilitate the plaintiff's return, and he was, in fact, returned to immigration custody. *Pablo Pablo v. Lyons*, 811 F. Supp. 3d 833, 839 (W.D. Tex. 2025); Pet'r's Status Report, *Pablo Pablo v. Lyons*, 3:25-cv-566-DCG, ¶ 12 (W.D. Tex. Dec. 18, 2025), ECF No. 29.

Nor does *Abrego Garcia* require a different result. *See* Reply 2, 7; 2d Reply 5. The language Plaintiff cites to in *Abrego Garcia*, that the order "properly requires the Government to 'facilitate' Abrego Garcia's release from custody," refers to Abrego Garcia's custody in El Salvador at the Center for Terrorism Confinement, release from which was a prerequisite to his return to the United States. *Abrego Garcia*, 145 S. Ct. at 1018. It does not refer to Abrego Garcia's custody status once returned to the United States. In fact, upon his return, Abrego Garcia was taken into federal custody on criminal charges in Tennessee. Order, *Noem v. Abrego Garcia*, 25-cv-951, 3 (D. Md. July 23, 2025), ECF No. 238. More importantly, when the court

granted Abrego Garcia's motion for his return to Maryland upon his release from criminal custody, the court found that return to Maryland was necessary to restore Abrego Garcia to his status quo—at liberty in Maryland pursuant to an Order of Supervision and protected from removal to El Salvador. *Id.* at 12–14. And the court noted that, "once Abrego Garcia is restored to ICE supervision in this District, he may be ordered to appear at the Baltimore Field Office for commencement of immigration proceedings, and these proceedings may or may not include lawful arrest, detention and eventual removal." *Id.* at 14. And when Abrego Garcia was subsequently taken into immigration custody for the purposes of removing him to Uganda, he filed a habeas petition in the District of Maryland, where he was confined. *See* Pet., *Abrego Garcia v. Noem*, 25-cv-2780 (D. Md. Aug. 25, 2025), ECF No. 1.

Unlike Abrego Garcia, at the time of Plaintiff's wrongful removal, he was already in immigration detention pursuant to an in-absentia removal order, which was stayed pending adjudication of his motion to reopen. *See* Compl. ¶¶ 2–5. Plaintiff, however, argues that if he had not been wrongfully removed to Honduras, he would have been subject to detention under 8 U.S.C. § 1226, not § 1225(b), and thus would have been eligible for a bond hearing. 2d Reply 3. And that Respondents' proposed use of Significant Public Benefit Parole ("SPBP") to return Plaintiff was "cooked up to recharacterize Plaintiff as an 'arriving alien' subject to [8 U.S.C. § 1225] [mandatory] detention authority." Reply 6; *accord* 3d Reply 4. But, under the Fifth Circuit's interpretation of § 1225(b) in *Buenrostro-Mendez*, Plaintiff, restored to his pre-removal status, would still be considered an arriving alien and thus subject to mandatory detention under the statute. *See Buenrostro-Mendez v. Bondi*, --- F.4th ----, 2026 WL 323330, at *502–507 (5th Cir. Feb. 6, 2026). While Plaintiff is correct that he must be restored to his pre-removal status, and thus his receipt of SPBP to facilitate his return cannot be used by the Government to alter his

status, this does not change the fact that the status quo Plaintiff is entitled to be returned to is in immigration custody pending removal proceedings.[1]

### C.  Plaintiff's Immigration Proceedings

As for the proper venue of Plaintiff's immigration proceedings, Plaintiff argues that his proceedings should remain in Charlotte and that the Government should be prohibited from seeking to transfer venue for the pendency of the proceedings.  Reply 2, 5; 2d Reply 8–9. However, prior to Plaintiff's wrongful removal, he was detained in Atlanta, Georgia, which is where Defendants plan, and ought to return him to restore the status quo.  *See* Compl. ¶ 12; Advisory ¶ 9.  At that time, there was nothing preventing the Government from seeking a transfer of Plaintiff's immigration proceedings from Charlotte to Stewart while he was detained in Atlanta.  The Court is not aware of, and Plaintiff does not point to any authority, that would allow this Court to prohibit the Government from seeking to transfer Plaintiff's immigration proceedings to a different venue, once Plaintiff is returned to Atlanta.  *See generally* Reply; 2d Reply.  Plaintiff is free to oppose the Government's transfer request in immigration court, but it is not for this Court to determine the proper venue of Plaintiff's immigration proceedings.

Nor can this Court grant Plaintiff the relief he requests regarding his potential removal to a third country and his preparation for his asylum hearing.  *See* Reply 10.  As to the former, whether Plaintiff will even be ordered removed, let alone to a third country, at the conclusion of his immigration proceedings is entirely speculative, and, more importantly, beyond the scope of the claims in this lawsuit.  As is Plaintiff's ability to prepare for his asylum hearing, which, by

---

[1] Notwithstanding a valid statutory basis for his detention, Plaintiff may be able to challenge his detention upon return on constitutional grounds.  *See, e.g.*, *Gomez Hernandez v. ICE Field Off. Dir.*, No. 3:26-cv-67-KC, 2026 WL 503958, at *1 –3 (W.D. Tex. Feb. 23, 2026).  The Court expresses no opinion as to the merits of any such hypothetical challenge.  It suffices to find that such a claim is not yet ripe and would have to be brought in the form of a habeas petition in the district of confinement following Plaintiff's return to the United States.

his own account, has been rescheduled for April 8, 2027, giving him almost a year to gather evidence and prepare.  *See* Compl. ¶ 21.

## III.   CONCLUSION

Accordingly, the Court **ORDERS** that Plaintiff  shall **FILE** written notice, **by no later than June 9, 2026**, stating whether he intends to proceed and have Defendants facilitate his return to the United States into immigration custody in Atlanta, Georgia, or if he no longer seeks his return and intends to voluntarily dismiss his Complaint.

**SO ORDERED.**

SIGNED this 12th day of May, 2026.

KATHLEEN  CARDONE
UNITED STATES DISTRICT JUDGE